UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOLLY BUGARI, | Case No. C-11-00084 JCS |
| Petitioner, | |
| v. | **ORDER GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT** [Docket No. 20] |
| JANET NAPOLITANO, | |
| Respondent. | |

## I. INTRODUCTION

Petitioner Jolly Bugari ("Petitioner") brings this action challenging the denial of her Form N-400 Application for Naturalization. Respondent Janet Napolitano brings a Motion for Summary Judgment in her favor pursuant to Fed. R. Civ. P. 56(c). A hearing on the Motion was held on Friday, July 1, 2011 at 9:30 a.m. For the reasons stated below, Respondent's Motion is GRANTED.

## II. BACKGROUND

### A. Facts

On October 21, 1982, Petitioner became a lawful permanent resident of the United States. Complaint at 3. On October 7, 1993, Petitioner was arrested for assaulting Paul R. Dhanda, M.D. with scalding hot water. A.R. at 16.[1] She was charged with three felony violations: 1) one count of Aggravated Mayhem, a felony violation of California Penal Code ("CPC") § 205; 2) one count of Torture, a felony violation of CPC § 206; and 3) one count of assault with a deadly weapon, other than a firearm, likely to produce great bodily injury, a felony violation of CPC § 245(a)(1). A.R at 12-13. Petitioner pleaded guilty to assault with a deadly weapon other than a firearm on June 28,

---

[1] "A.R." refers to the certified administrative record attached in its entirety to the Declaration of Ila C. Deiss in Support of the Respondent's Motion for Summary Judgment ("Deiss Decl.").

1996 and was sentenced to a term of three years and a fine of $5,000.00. *Id* at 10-11.  Petitioner served eighteen months of the sentence and completed the required probation. *Id.*

The U.S. Immigration and Nationalization Service ("INS") took Petitioner into custody on March 26, 1998. *Id.* at 10.  On March 26, 1998,  Petitioner was also served with a Notice to Appear to show why she should not be removed from the United States. *Id.*  On October 14, 2003 an immigration judge granted Petitioner a waiver of inadmissibility, which allowed her to retain her status as a lawful permanent resident. *Id.*

On September 9, 2009, Petitioner completed a Form N-400 Application for Naturalization, *id.* at 28, and submitted the application on September 17, 2009. *Id.* at 19.  On June 4, 2010, the United States Bureau of Citizenship and Immigration Service ("the Service")[2] denied Petitioner's application for naturalization.  *Id.* at 10.  In its written decision, the Service concluded Petitioner was permanently ineligible for naturalization based on her 1996 felony conviction, citing the definition of "aggravated felony" found in Section 101(a)(43)(f) of Title 8 of the United States Code.  *Id.*  The Service explained that although Petitioner's offense was not an aggravated felony at the time of her conviction, the term was subsequently redefined under Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") and that the amended definition was applied retroactively to convictions after 1990 under 8 C.F.R. § 316.10(b)(1) and *Aragon-Ayon v. INS*, 206 F.3d 84 (9th Cir. 2000).  *Id.* At the Petitioner's request, the Service conducted a review hearing of her application on August 11, 2010.  *Id.* at 10.  On September 9, 2010, the Service again upheld the initial denial of the Petitioner's naturalization application, relying upon Section 101(a)(43)(f), 8 C.F.R. § 316.10(b)(1), and *Aragon-Ayon*. *Id.*

On January 11, 2011, Petitioner instituted this lawsuit by filing a Petition requesting a *de novo* hearing on her application for naturalization.

---

[2]The Homeland Security Act of 2003 abolished the INS. Pub. L. 107-296 § 471. Determinations regarding removal and naturalization were shifted to a new agency, the United States Bureau of Citizenship and Immigration Service. Pub. L. 107-296 § 451.

**B. Statutory and Regulatory Framework**

**1. Naturalization Requirements**

To be eligible for naturalization, the Immigration and Nationality Act of 1952 ("INA") requires that Petitioner establish that she:

> (1) immediately preceding the date of filing [her] application for naturalization has resided continuously, after being lawfully admitted for permanent residence, within the United States for at least five years and during the five years immediately preceding the date of filing [her] application has been physically present therein for periods totaling at least half of that time, and who has resided within the State or within the district of the Service in the United States in which the applicant filed the application for at least three months, (2) has resided continuously within the United States from the date of the application up to the time of admission to citizenship, and (3) during all the periods referred to in this subsection has been and still *is a person of good moral character*, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the United States.

8 U.S.C.A. § 1427(a) (emphasis added). The naturalization requirement at issue in the present case is the good moral character requirement.

**2. Requirement of Good Moral Character**

Since its enactment in 1952, the INA has required good moral character for an applicant to be considered for naturalization. 8 U.S.C. § 1427(a) (1952). Although the INA does not define "good moral character," it does enumerate specific characteristics that preclude a finding of good moral character. *See* 8 U.S.C.A. § 1101(f) (hereinafter, "good moral character bar"). In 1988, Section 1101(f)(8) read "[f]or the purposes of this chapter no person shall be regarded as, or found to be, a person of good moral character who, during the period for which good moral character is required to be established is, or was . . . (8) one who at any time has been convicted of *the crime of murder*." 8 U.S.C. § 1101(f)(8) (1988) (emphasis added). On November 29, 1990, Congress enacted the Immigration Act of 1990, in which it amended the language in Section 1101(f)(8) by replacing "the crime of murder" with "an aggravated felony (as defined in subsection (a)(43))." Immigration Act of 1990 ("IMMAct 90"), Pub. L. No. 101-649 § 509(a). Subsequently, Section 1101(f)(8) read: "[n]o person shall be regarded as, or found to be, a person of good moral character who, during the period for which good moral character is required to be established, is, or was . . . (8) one who at any time has been convicted of an aggravated felony (as defined in subsection (a)(43) of this section)." 8 U.S.C.A. § 1101(f)(8) (2011). The effective date of the 1990 amendment was "the date of the

3

1 enactment of [the] Act," that is, November 29, 1990. IMMAct 90, Pub. L. No. 101-649 § 509(b).
2 Furthermore, the effective date provision stated that the amended section "shall apply to convictions
3 occurring on or after such date." *Id.*

### 3. Definition of Aggravated Felony

Before September 30, 1996, the definition of an aggravated felony included violent crimes for which the sentence "imposed . . . is *at least 5 years.*" 8 U.S.C. § 1101(a)(43)(F) (1994) (emphasis added)*, amended by* Pub. L. 104-208 Title III, § 321, 110 Stat 3009 (1996). On September 30, 1996 Congress enacted IIRIRA, amending the definition of an aggravated felony to include "a crime of violence . . . for which the term of imprisonment is *at least one year.*" 8 U.S.C.A § 1011(a)(43)(F) (emphasis added); IIRIRA, H.R. Conf. Rep. 104-828, 104th Cong. § 321(a)(4) (1996). IIRIRA also amended the effective date of the aggravated felony definition by adding the following language to the end of Section 1101(a)(43): "[n]otwithstanding any other provision of law (including any effective date), the term applies regardless of whether the conviction was entered before, on, or after the date of enactment of this paragraph." Pub. L. 104-208, Title III, Subtitle B, § 321(b). IIRIRA further provided in its effective date provision that "the amendments made . . . shall apply to actions taken on or after the date of the enactment of [IIRIRA], regardless of when the conviction occurred." Pub. L. 104-208, Title III, Subtitle B, § 321(c).

### C. The Petition

In her Petition, Petitioner asserts that the Service was in error when it denied her application for naturalization because at the time of her guilty plea, in June 1996, her conviction was not classified as an aggravated felony and thus did not statutorily and permanently bar her from establishing good moral character. Petition at 1-2. Petitioner further asserts that to the extent that IIRIRA subsequently amended the definition of "aggravated felony" to include offenses that carried a term of imprisonment of one year or more, rather than the previous five year term, the amended definition does not apply retroactively in the context of a petition for naturalization. *Id.* (citing *Ledezma-Galicia v. Holder*, 636 F.3d 1059 (9th Cir. 2010). In that case, the court conducted a separate analysis of the substantive immigration consequences of the amended definition of "aggravated felony" in connection with removal proceedings, holding that although the definition

applied retroactively, thus rendering the petitioner removable under the relevant provision, the discretionary relief that had been read into that provision had not been eliminated retroactively. *Ledezma-Galicia v. Holder*, 636 F.3d at 1079. In reaching this conclusion, the court relied on the approach set forth in *Landgraf v. USI Film Prods.*, 511 U.S. 244 (1994), for determining whether a statute should be given retroactive effect. *See Ledezma-Galicia*, 636 F.3d at 1076, 1079-80. In *Landgraf*, the Supreme Court held that where a statute has a genuine retroactive effect, there is a presumption against retroactive application absent clear congressional intent favoring such a result. *Landgraf*, 511 U.S. at 268. Petitioner argues that in this case, as in *Ledezma-Galicia*, a separate *Landgraf* analysis is necessary to determine whether there was clear congressional intent to apply IIRIRA retroactively to good moral character determinations in the context of naturalization applications. *See* Petition at 4.

Petitioner further argues that under *Landgraf,* there is a lack of clear congressional intent to apply the amended definition of "aggravated felony" to good moral character determinations. *See* Petition at 4. Petitioner concedes that in *Aragon-Ayon v. INS*, the Ninth Circuit held that the aggravated felony definition, as amended by IIRIRA, is retroactive. Petition at 3 (citing *Aragon-Ayon*, 206 F.3d 847). Petitioner distinguishes *Aragon-Ayon*, however, on the basis that in that case, the Ninth Circuit only addressed the retroactive application of IIRIRA's amended definition of an aggravated felony in a removal proceeding. *Id.*

As a remedy for the Service's alleged error, Petitioner asks the Court for a "review and a *de novo* hearing on her application for naturalization . . . under 8 U.S.C. § 1421(c)." Petition at 2.

**D.     The Motion**

Respondent asserts that it is entitled to summary judgment on the Petition because the Service correctly denied Petitioner's application for naturalization as a matter of law. Motion at 2. In particular, Respondent contends that the amended definition of "aggravated felony" adopted in IIRIRA applies retroactively to Petitioner's June 1996 conviction for the purposes of determining whether Petitioner is barred from establishing good moral character under the aggravated felony provision in 8 U.S.C.A. § 1104(f). *Id.* In support of its position, respondent cites to *Aragon-Ayon*, in which the Ninth Circuit held "that Congress intended the 1996 amendments [of IIRIRA] to make

5

the aggravated felony definition apply retroactively to all defined offenses whenever committed, and to make aliens so convicted eligible for deportation notwithstanding the passage of time between the crime and the removal order." *Aragon-Ayon* 206 F.3d at 854. According to Respondent, the Court in *Aragon-Ayon* recognized the general presumption against the retroactive application of statutes but found that this presumption was overcome by the language of IIRIRA, which clearly manifested an intent on the part of Congress to apply the amended definition of aggravated felony retroactively. Motion at 7 (citing *Aragon-Ayon,* 206 F.3d at 851). Therefore, Respondent argues, the definition of aggravated felony applies retroactively to bar Petitioner's request for naturalization notwithstanding IIRIRA's enactment or effective date. *Id.* at 7.

Respondent argues further that Petitioner's reliance on *Ledezma-Galica* in her Petition is misplaced because that case involved a different set of statutes, including the Anti-Drug Abuse Act of 1988 (ADAA), Pub. L. No. 100-690. *Id.* According to Respondent, that case turned on the fact that at the time of the petitioner's conviction in 1988, the INA did not include the category of "aggravated felony" as grounds for deportation. *Id.* While the subsequent enactment of the ADAA made an "aggravated felony" a deportable offense, the court found that the ADAA was not intended to be applied retroactively. *Id.* (citing *Ledezma-Galicia*, 636 F.3d at 1063). As a result, the amended definition in IIRIRA did not render the petitioner deportable, even though the new definition applied retroactively. *Id.* In other words, "the ADAA's temporal limitation remains in effect as an exception to other temporal provisions enacted later, precluding the deportation of an individual convicted prior to the enactment of the ADAA." *Ledezma-Galicia*, 636 F.3d at 1063. Respondent argues that *Ledezma-Galica* does not apply here because the Petitioner was convicted in 1996 and therefore there is no basis for distinguishing between the retroactivity of the definition and the retroactivity of the "substantive immigration consequence." Motion at 7-8.

In fact, Respondent asserts the Service did not apply the aggravated felony bar retroactively to the Petitioner because the aggravated felony bar to good moral character was established by the IMMAct 90, Pub. L. 101-649, § 509, with an effective date of November 29, 1990, that is, well before Petitioner's conviction. Motion at 8. Respondent relies on *United States v. Hovsepian,* 359 F.3d 1144 (9th Cir. 2004), in which the Ninth Circuit held that "Congress explicitly limited the reach

1  of § 1101(f)(8) to conduct occurring after November 29, 1990." *Id.* at 8 (quoting *United States v.*
2  *Hovsepian*, 359 F.3d at 1166). The court in *Hovsepian* found that the respondents in that case could
3  not be removed under the INA's aggravated felony removal provision because the respondents were
4  convicted of aggravated felonies in 1984, before the IMMAct 90 was enacted. *United States v.*
5  *Hovsepian*, 359 F.3d at 1166.

### E.     The Opposition

In her Opposition brief, Petitioner concedes that aggravated felons were barred for life from establishing good moral character at the time of the her conviction. Opposition to Respondent's Motion for Summary Judgment ("Opposition") at 1. However, Petitioner asserts that at the time of her plea her offense was not categorized as an aggravated felony and therefore, her conviction should not give rise to a categorical bar to naturalization. *Id.* In support of this position, Petitioner argues that while IIRIRA retroactively amended the *definition* of an aggravated felony, as the Ninth Circuit held in *Aragon-Ayon*, this does not mean that the "substantive immigration consequence" of the amended definition is also applied retroactively. *Id.* Petitioner relies on *Lopez-Castellanos v. Gonzales*, 437 F.3d 848, 843 (9th Cir. 2006) and *Ledezma-Galicia*, 636 F.3d at 1079-80, in which the Ninth Circuit held that although the amended aggravated felony definition was intended to be applied retroactively, the substantive immigration consequences that flowed from the amended definition did not necessarily apply retroactively. Opposition at 2. Similarly, Petitioner asserts, it is necessary in this case to conduct a separate analysis under *Landgraf*, 511 U.S. 244, and *INS v. St. Cyr*, 533 U.S. 289 (2001), to determine whether the substantive immigration consequence of amending the aggravated felony definition, namely, barring a finding of good moral character for the purposes of naturalization, was also intended to apply retroactively. *Id.*

Applying the approach set forth in *Landgraf* and *St. Cyr*, Petitioner argues that the presumption against retroactivity has not been overcome because there is no clear Congressional intent to impose a lifetime bar to naturalization on individuals who pleaded guilty before the enactment of the IIRIRA to offenses that were not aggravated felonies at the time of the plea. Opposition at 4. Petitioner points out that when Congress adopted the aggravated felony bar, in 1990, it did so prospectively only, indicating that Congress believed that an individual must be

aware of the permanent bar to naturalization at the time of her plea in order for the conviction to give rise to a permanent bar on naturalization. *Id.* Petitioner also relies upon a congressional amendment to the aggravated felony bar to establishing good moral character that was proposed in 2005 but has not been enacted. *Id.* (citing Border Protection, Antiterrorism, and Illegal Immigration Control Act, H.R. 4437, 109th Cong. § 612(a)(2) (2005)). The proposed amendment would apply the aggravated felony bar to good moral character regardless of the classification of the conviction at the time of the conviction. *Id.* Petitioner argues that the proposed amendment would be superfluous if Congress originally intended that the amended definition of aggravated felony was to apply retroactively for the purposes of determining whether the good moral character requirement is met. *Id.*

### G. The Reply to the Opposition

In its Reply, Respondent argues that no separate analysis is necessary under *Landgraf* and *St.Cyr* because the aggravated felony bar to good moral character was not retroactively applied to the Petitioner. *Id.* Respondent concedes that Petitioner's conviction was not an aggravated felony at the time of her plea but points out that the aggravated felony bar was in place before Petitioner's conviction. *Id.*

In any event, Respondent asserts, *Lopez-Castellanos* and *St. Cyr*, are not on point because they involved immigration waivers that were repealed by IIRIRA – a type of immigration consequence that is not at issue in this case. Reply at 3. Respondent further distinguishes Petitioner's case on the basis that the petitioner in *Lopez-Castellanos* was convicted before the enactment of the aggravated felony bar to establishing good moral character in 1990. Reply at 4.

## III. JURISDICTION

This Court has jurisdiction to conduct a *de novo* review of Petitioner's application pursuant to 8 U.S.C. § 1421(c):

> A person whose application for naturalization . . . is denied, after a hearing before an immigration officer under section 1447(a) of this Title, may seek review of such denial before the United States district court for the district in which such person resides. . . . Such review shall be de novo, and the court shall make its own findings of fact and conclusions of law and shall, at the request of the petitioner, conduct a hearing de novo on the application.

8 U.S.C.A. § 1421(c) (West 2011).

## IV. ANALYSIS

### A. Legal Standard Under Rule 56

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Summary judgment must be supported by "facts as would be admissible in evidence." Fed. R. Civ. P. 56(e).  In order to prevail, a party moving for summary judgment must show the absence of a genuine issue of material fact with respect to an essential element of the non-moving party's claim, or to a defense on which the non-moving party will bear the burden of persuasion at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the movant has made this showing, the burden then shifts to the party opposing summary judgment to designate "specific facts showing there is a genuine issue for trial."  *Celotex*, 477 U.S. at 323.  On summary judgment, the court draws all reasonable factual inferences in favor of the non-movant. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 255 (1986).

### B. Retroactivity Doctrine

In *Landgraf*, the Supreme Court set forth guidelines determining whether a statute should be applied retroactively.  *Landgraf* requires that Congress make its intentions clear if the Court is to give retroactive effect to a statutes that burdens private rights of individuals. *Landgraf*, 511 U.S. at 270.  Conversely, if there is no clear intent, a statute cannot be applied retroactively if it "takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past." *Id.* at 269.

The Supreme Court in *St. Cyr* applied the *Landgraf* framework in the immigration context, using a two-step approach to determine whether a statute has an impermissible retroactive effect. *St. Cyr*, 533 U.S. at 316-17.  Under this approach, the court must first ascertain whether Congress has directed with the requisite clarity that the law be applied retrospectively. *Id.* at 316. This requirement is not met if there are alternative reasonable interpretations of the statute suggesting Congress did not intend that the statute be applied retroactively.  *See id.* at 316-17.  If the statutory language and

the legislative history are ambiguous, the court must then proceed to step two and determine whether, under the *Landgraf* test, the provision produces a retroactive effect. *Id.* at 320. The *St. Cyr* court reiterated that if there is a retroactive effect, it is presumed that Congress did not intend the statute to apply retroactively. *Id.* at 316 (citing *Landgraf*, 511 U.S. at 270).

### C. Whether the Amended "Aggravated Felony" Definition Applies Retroactively to Bar Petitioner's Naturalization

There is no dispute as to the material facts of this case. Rather, the issue in this case is purely a question of law, namely, whether Petitioner's conviction bars her from meeting the naturalization requirement of establishing good moral character. Respondent asserts that it does because the amended definition of "aggravated felony" adopted under IIRIRA applies retroactively to Petitioner's conviction. The Court agrees.

IIRIRA expressly states that the amended definition of "aggravated felony" "applies regardless of whether the conviction was entered before, on, or after the date of [the IIRIRA's] enactment." Pub. L. 104-208, Title III, Subtitle B, § 321(b). It goes on to state that the amendment "shall apply to actions taken on or after the date of the enactment of the Act, regardless of when the conviction occurred." *Id.*, § 321(c). In *Aragon-Ayon*, the Ninth Circuit concluded that this language expressed clear congressional intent that the amended definition in IIRIRA be applied retroactively to INA Section 237(a)(2)(A)(iii), codified at 8 U.S.C. § 1227(a)(2)(A)(iii), which provides that an alien who "is convicted of an aggravated felony any time after admission is deportable." 206 F.3d at 852-853. The reasoning offered in *Aragon-Ayon* support a similar conclusion here.

In *Aragon-Ayon*, the petitioner appealed a 1997 deportation order based on a 1992 conviction for which he was sentenced to one year in custody, which rendered him deportable under Section 237(a)(2)(A)(iii) if the amended definition of "aggravated felony" applied retroactively but not under the definition of "aggravated felony" that was in effect at the time of his conviction. *Id.* at 849. The Court rejected the petitioner's assertion that the words "actions taken" in Section 321(c) of IIRIRA (quoted above) rendered the provision ambiguous and therefore indicated that Congress did not clearly intend that the amended definition apply retroactively. *Id.* Instead, the court found that Congress's intent was clear, citing to the fact that Congress made an exception as to the retroactivity

of the definition of "aggravated felony" relating to prosecutions brought by the Attorney General under a separate section of the INA, Section 276(b). The Court reasoned that "Congress understood the retroactive impact of IIRIRA § 321(b) as drafted, in part because it took steps to make one express exception to retroactive application." *Id*. The court continued, "[i]t is reasonable to infer, from the absence of any further comment from Congress, that it intended the amended definition to be retroactive in all other cases, just as the language provides. *Id*. That inference is equally reasonable in this case.

The Court rejects Petitioner's assertion that a separate *Landgraf* analysis is necessary to address the "substantive immigration consequences" of the amended definition because the cases cited by Petitioner in support of this contention – *Ledezma-Galicia* and *Lopez-Castellanos* – are distinguishable. In *Ledezma-Galicia*, the petitioner pleaded guilty to one count of sodomy and was sentenced to a term of eight months in custody in 1988. *Ledezma-Galica* 636 F.3d at 1062. Two months after the petitioner's conviction, the Anti-Drug Abuse Act of 1988 (ADAA) was enacted, making "aggravated felony" a basis for removal as to aliens who were convicted *on or after* the date of enactment of the ADAA. *Id*. at 1064. In the ADAA, the term "aggravated felony" encompassed only murder, drug trafficking crimes and illicit trafficking in firearms or destructive devices. *Id*. (citing ADAA § 7342). In 1990, the IMMAct 90 reiterated that aggravated felony was a ground for deportation, but the definition of "aggravated felony" that was in effect at that time did not include Ledezma-Galicia's offense as an aggravated felony. *Id*. It was not until 1996, when IIRIRA was enacted, that his offense fell within the definition of "aggravated felony." *Id* at 1065. In 2003, removal proceedings were initiated against Ledezma-Galicia on the basis of the amended definition of "aggravated felony" in IIRIRA, and he was found to be removable. *Id*. at 1066. Ledezma-Galicia challenged his removal in federal court, and the Ninth Circuit held that it was improper because the amended definition of "aggravated felony" did not render him deportable. *Id*. at 1079.

The Ninth Circuit explained that while the definition of "aggravated felony" in IIRIRA might be retroactive, this did not control the "substantive immigration consequence" of that amendment because at the time of Ledezma-Galicia's conviction, aggravated felony was not a basis for removal. *Id*. The Court distinguished *Aragon-Ayon* on this basis, pointing out that "[n]one of the cases that

11

established the retroactivity of the aggravated felony definition discussed whether a pre-1988 conviction could trigger deportability." *Id*. at 1080 n. 23. The Court went on to reason that IIRIRA did nothing to change the temporaral limitations of ADAA or the IMMACt 90, both of which operated prospectively, and therefore, the amended definition of "aggravated felony" did not give rise to the substantive immigration consequence of deportability. *Id*. In contrast, in this case, the "substantive immigration consequence" is a bar to naturalization based on an aggravated felony conviction. That bar was introduced in 1990, under the IMMAct90, and therefore, the Service's determination in this case is consistent with the temporal limitations in that Act.

Similarly, the facts here are distinguishable from those in *Lopez-Castellanos.* In *Lopez-Castellanos*, the petitioner pleaded guilty to one count of lewd or lascivious acts with a child under the age of 14 on October 21, 1988. 437 F.3d at 850. After the enactment of IIRIRA, when the petitioner's conviction became an aggravated felony, removal proceedings were initiated on the basis of the petitioner's conviction; the petitioner was found to be removable and ineligible for the discretionary relief that was available prior to IRIIRA's enactment. *Id*. The immigration judge also concluded that a discretionary waiver was not justified because petitioner's previous conviction showed a lack of good moral character. *Id*.

The petitioner challenged the removal, arguing that even if the definition of "aggravated felony" in IIRIRA operated retroactively and therefore included his conviction, he remained eligible for discretionary relief, which would have been available to him prior to the enactment of IIRIRA under INA § 244(a)(1), 8 U.S.C. § 1254(a)(1) (repealed 1996) . *Id*. This discretionary "suspension -of-deportation relief" was replaced in IIRIRA with a more limited provision, codified at 8 U.S.C. § 1229b(b), allowing for the cancellation of removal but eliminating discretion to suspend removal for those who have been convicted of an aggravated felony. *Id*. at 852. Thus, the question in *Lopez-Castellanos* was whether the more limited provision governing discretionary relief was intended to apply retroactively in order to bar the petitioner from eligibility for discretionary relief. The Court found that IIRIRA contained no clear statement reflecting congressional intent that this "substantive immigration consequence" would have retroactive effect and therefore, that the petitioner was eligible to be considered for discretion. *Id*. Nonetheless, it upheld the rejection of the petitioner's

application for cancellation of removal on the alternative ground that the court did not have jurisdiction to review the agency's decision not to exercise its discretion to cancel the removal. *Id.* at 854.

This case does not involve the question of whether the amended provisions of IIRIRA governing eligibility for discretionary relief should be applied retroactively. Therefore, the court's conclusion in *Lopez-Castellanos* relating to congressional intent in connection with those provisions is not controlling here.

The Court also rejects Petitioner's reliance on the 2005 proposed congressional amendment discussed above to establish that Congress did not intend that the amended definition of "aggravated felony" in IIRIRA be applied retroactively with respect to good character determinations. As the Ninth Circuit has noted, "[t]he light shed by such unadopted proposals is too dim to pierce statutory obscurities." *Tahoe Regional Planning Agency v. McKay*, 769 F.2d 534, 539 (9th Cir. 1985) (internal quotations omitted) (citing *Sacramento Newspaper Guild v. Sacramento County Bd. of Supervisors*, 69 Cal.Rptr. at 492).

Finally, the Court notes that a number of other courts facing similar facts have also reached the conclusion that an individual convicted of a felony after 1990 is barred from establishing good moral character for the purposes of naturalization even if the offense was not considered an aggravated felony at the time of the conviction. *See, e.g., Alocozy v. United States Citizenship & Immigration Services*, 2011 WL 1601585 (E.D.Cal. April 27, 2011) (holding that petitioner was barred from establishing good moral character on the basis of 1991 conviction for offense that became an aggravated felony under IIRIRA); *Bakerian v. INS*, 2004 WL 724946 (N.D. Cal., March 30, 2004 ) (holding that petitioner was barred from establishing good moral character on the basis of 1992 conviction for offense that became an aggravated felony under IIRIRA); *Chan v. Gantner*, 464 F.3d 289 (2d Cir. 2006) (holding that petitioner was barred from establishing good moral character on the basis of 1993 conviction for offense that became an aggravated felony under IIRIRA); *Gorenyuk v. U.S. Dep't Homeland Security*, 2007 WL 3334340 (N.D. Ill., Nov. 8, 2007) (holding that petitioner was barred from establishing good moral character on the basis of 1993 conviction for offense that became an aggravated felony under IIRIRA).

**V.      CONCLUSION**

For the reasons stated above, Respondent's Motion for Summary Judgment is GRANTED. Accordingly, the Petition is dismissed with prejudice.

IT IS SO ORDERED.

Dated: July 1, 2011

_____
JOSEPH C. SPERO
United States Magistrate Judge